**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GRADY MCBROOM and ZETA MCBROOM** | § § § | **PLAINTIFFS** |
| **V.** | § § § | **CAUSE NO. 1:06cv1222-LG-JMR** |
| **SHERIFF GEORGE PAYNE, JR., OFFICIALLY; OFFICER JOHN MASSENGILL, OFFICIALLY AND IN HIS INDIVIDUAL CAPACITY; and UNKNOWN DEFENDANTS** | § § § § § § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART MASSENGILL'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant John Massengill's Motion for Qualified Immunity and Summary Judgment [176]. Plaintiffs Grady and Zeta McBroom brought this action under federal and state law when Massengill shot Mrs. McBroom during a police chase. He argues (1) the official capacity § 1983 claim is really against Harrison County, (2) the individual capacity § 1983 claims are barred by the statute of limitations, (3) there was no excessive force, (4) he is entitled to qualified immunity, (5) he did not conspire, (6) the Amended Complaint fails to state claims under Sections 1985 and 1986, (7) he was acting in the course and scope of his employment, (8) she was engaged in criminal activity, and (9) he did not commit the state law torts. The Court has considered the parties' submissions and the relevant legal authority. Summary judgment is granted on the individual capacity claims for Section 1983 conspiracy, negligent infliction of emotional distress, and civil conspiracy. The Section 1983 official capacity claims against Massengill and Sections 1985 and 1986 claims are

dismissed without prejudice.  The remainder is denied.

## FACTS AND PROCEDURAL HISTORY

The McBrooms are husband and wife who reside in Harrison County, Mississippi.  Defendant George Payne, Jr., is the former Sheriff of Harrison County.  Massengill is a Sergeant with the Harrison County Sheriff's Department.

On the evening of January 2, 2006, after 9:00 p.m., Mrs. McBroom was traveling north on County Farm Road in Harrison County.  Massengill was traveling behind her.  He was on duty as a patrol officer for the Sheriff's Department.  He tried to pull her over on suspicion of drunk driving, but she would not stop.  Instead, a pursuit ensued.

The pursuit ended up on Saucier Lane in Gulfport.  Because it was a dead end road, Mrs. McBroom brought her vehicle to a stop.  Massengill stopped his patrol car behind her.  By this time Sheriff's Deputy Justin Branning had joined the pursuit, and he was parked behind Massengill.  Before either officer could get out of their cars, she began to back up toward Massengill's car.  According to her she was trying to turn around to leave the cul de sac.  She pushed his patrol car nine feet with her Bronco.  The vehicles separated when hers proceeded forward and then veered off to the right, running off the road into a ditch.  At some point, Massengill fired at least eleven rounds from his service weapon.  Eight bullets penetrated the back of her vehicle.  One struck her in the back of the neck.  For the purpose of this summary judgment motion, Massengill concedes that he fired his weapon after McBroom had driven thirty-five feet away from his patrol car.

Mrs. McBroom brought claims against Massengill, both officially and

2

individually, under Section 1983 for the use of excessive force, conspiracy to use excessive force, and conspiracy to cover up excessive force.  She purported to bring Sections 1985 and 1986 claims and brought state law claims against him in both his official and individual capacities.  Mr. McBroom brought a loss of consortium claim against Massengill, officially and individually.

On April 29, 2010, Mrs. McBroom voluntarily dismissed "all 42 U.S.C. § 1983 claims against Defendant JOHN MASSENGILL, IN HIS INDIVIDUAL CAPACITY ONLY." (Stipulation of Dismissal Without Prejudice as to Massengill at 1).  After a dispute over the meaning of this stipulation, she filed a Notice of Withdrawal of the Stipulation "until such time [as] there can be an amended stipulation which accurately reflects the agreement of counsel." (Pls.' Notice of Withdrawal at 2 (¶3)).  At such time, she would seek an Amended Stipulation which would dismiss without prejudice "all 42 U.S.C. § 1983 claims against Defendant JOHN MASSENGILL, IN HIS INDIVIDUAL CAPACITY ONLY **AS THEY RELATE TO ANY CLAIMS REGARDING ANY ACTIONS TAKEN BY DEFENDANT JOHN MASSENGILL OUTSIDE THE COURSE AND SCOPE OF HIS EMPLOYMENT.**" (Pls.' Notice of Withdrawal Ex. B at 1).  Massengill objects.

## DISCUSSION

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  The Court must view

3

the evidence in the light most favorable to the non-moving party.  *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005).  A "material fact" is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 325.  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

SECTION 1983

Massengill seeks summary judgment in both his individual and official capacities under Section 1983.

I.   OFFICIAL CAPACITY

Massengill argues that the official capacity claim should be dismissed because

4

it is really against Harrison County, and he was not the policy maker.  Mrs. McBroom simply responds that Massengill engaged in the use of excessive force.

A claim brought against a government employee in his official capacity is actually a claim against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Thus the claim against Massengill in his official capacity as Sergeant with the Harrison County Sheriff's Department is actually a claim against Harrison County.  Payne was sued in his official capacity as the Harrison County Sheriff.  Under Mississippi law the elected sheriff, not his subordinate deputies, is the department policy maker.  The Court will dismiss the official capacity claims against Massengill.

I.     INDIVIDUAL CAPACITY

Massengill next seeks a ruling that (1) the statute of limitations bars any future individual capacity claims against him, and (2) alternatively, he is entitled to qualified immunity and (3) summary judgment on the merits of individual capacity claims.  Mrs. McBroom responds with a request to add back the individual capacity claims and argues there is a dispute of fact regarding these claims.

A.     AMENDMENT

On April 29, 2010, the parties agreed to a dismissal of the individual capacity claims without prejudice to Mrs. McBroom's right to reassert them later.  Thus, these claims were dismissed without prejudice.  Massengill moved for the Court to enter summary judgment that this stipulation is effectively with prejudice and the claim has no merit anyway.  As a result, she seeks leave to add this claim back, which the Court

5

construes as a motion to amend.

First, Massengill has opened the door to this claim by seeking a judgment on the merits of the claim and on his qualified immunity. Therefore the individual capacity claims against him are before the Court, without need for an amendment by Mrs. McBroom.

Second, the Rules of Civil Procedure allow Mrs. McBroom to make this amendment. The amended pleadings deadline was April 20, 2007. On August 14, the case was stayed by agreement of the parties in favor of criminal proceedings. The stay was lifted on June 22, 2009. The McBrooms were allowed to file the Amended Complaint on September 22. She sought leave to make the current amendment on June 29, 2010.

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). To determine good cause, the Court must consider (1) Mrs. McBroom's explanation for the failure to timely move, (2) the importance of the amendment, (3) potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice. *Id.*

Mrs. McBroom argues she was not on notice until Massengill's summary judgment motion that he was seeking to exclude any future individual capacity claims and that he had an allegedly different understanding of the stipulation. She claims the

6

stipulation was meant only to dismiss the individual capacity claims to the extent that he was acting outside of his employment with Harrison County.  She does not provide evidence of this misunderstanding, especially since she drafted the stipulation.  However, Massengill clearly sought to bring the individual capacity claims back in issue in his motion for summary judgment.  About two weeks later she asked to bring back the claim.

The amendment is important because it is now the only means Mrs. McBroom would have to pursue her constitutional claims, as the Court has previously held there is no official capacity liability in this case under Section 1983.  Further, Massengill does not challenge the importance of the proposed amendment.  It is undisputed that discovery was already had on the claims.  Since he already moved for qualified immunity and summary judgment on the individual capacity claims, he is not prejudiced by a missed opportunity for summary judgment.  The amendment has no effect on the trial date.  Therefore, the Court finds that there is good cause for an extension of the amendment deadlines.

The Court must now consider whether the amendment itself should be allowed. *Id.*  A party may amend its pleadings with the Court's leave, and "[t]he Court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  According to the Fifth Circuit:

> The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.  Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

7

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  Denial may be justified where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, and undue prejudice to the non-movant.  *Id.*  Judicial economy may also be considered.  *Id.*  The passage of time alone is not sufficient to justify a denial.  *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975) (reversing trial court's denial of amendment to add counterclaim two months before trial).  For the reasons discussed above, the Court does not find Mrs. McBroom acted with undue delay, bad faith, or dilatory motive.  The issue was raised by Massengill four months before the scheduled Pre-Trial Conference and five months before the scheduled trial.  There was no repeated failure to cure by previous amendment, because Massengill was not dismissed until well after the previous amendment, and the issue was not revived until his motion filed in June.  As explained, there is no undue prejudice to him.  Finally, judicial economy is best served by trying the excessive force and Section 1983 claims in the same lawsuit with the issues of whether or not Massengill committed assault, battery, infliction of emotional distress, and a civil conspiracy for the exact same conduct.  Accordingly, the motion to amend will be granted.

### B.   STATUTE OF LIMITATIONS

Massengill next argues that any individual capacity claim is barred by the statute of limitations because, once these claims were dismissed without prejudice, it was as if they were never filed on December 4, 2006.  He argues that the limitations

therefore ran.

Mississippi's three-year residual statute of limitations applies to the § 1983 claims. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). The shooting occurred on January 2, 2006. Massengill is accused of excessive force and conspiracy. The statute of limitations begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* at 414. Assuming the limitations began to run on the day she was shot, she therefore had until January 2, 2009 to file the individual capacity claims.

The Complaint was filed on December 4, 2006, for this incident against Payne and Massengill under federal and state law. The Section 1983 individual capacity claims were dismissed against Massengill in April, 2010. The individual capacity claims have been amended back into the case. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The original Complaint concerned the exact same conduct, transaction, or occurrence, because it concerns the shooting incident and the alleged conspiracies of excessive force and to deny access to courts. Therefore, this amendment to revive the individual capacity claims against Massengill relates back to the original Complaint dated December 4, 2006. The claims are timely.

     C.    EXCESSIVE FORCE

In the alternative, Massengill argues (1) there was no excessive force because

Mrs. McBroom presented an immediate threat to his and residents' safety, and (2) he is qualifiedly immune.  She responds that she was not an immediate threat.

The Fourth Amendment protects a free citizen, who is the subject of a seizure, from excessive force.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The standard for analyzing an excessive force claim under the Fourth Amendment is a reasonableness standard.  *Id.*  "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."  *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).  This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable.  *Hudson v. McMillan*, 503 U.S. 1, 9 (1992); *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998).  To judge objective reasonableness under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  The "reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury.  This is not only because the jury must resolve disputed fact issues but also because the use of juries in such cases strengthens our understanding of Fourth Amendment reasonableness."  *Lytle v. Bexar Cnty.*, 560 F.3d 404, 411 (5th Cir. 2009).

Police cannot resort to deadly force, unless they have probable cause to believe

that the suspect has committed a felony and poses a threat to the safety of the officers or a danger to the community if left at large.  *Garner*, 471 U.S. at 6.  A police officer may not shoot an unarmed, non dangerous suspect.  *Id.* at 11.  If the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."  *Id.*  "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  *Id.* at 11-12.  An officer may use deadly force in self-defense where he has probable cause to believe that the suspect poses a threat of serious physical injury or death to the officer.  *Fraire v. City of Arlington*, 957 F.2d 1268, 1280 (5th Cir. 1992).  In the deadly force context, the focus of the inquiry is "the act that led [the officer] to discharge his weapon."  *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009).

Finally, "an exercise of force that is reasonable at one moment can become unreasonable the next if the justification for the use of force has ceased."  *Lytle*, 560 F.3d at 413 (cert. denied, *Bexar Cnty. v. Lytle*, 130 S. Ct. 1896, Mar. 22, 2010).  For example, when a car was backing up on a pedestrian officer, he may have had justification to shoot.  *Lytle*, 560 F.3d at 414.  Nevertheless, where the car then stopped, drove forward, and was three or four houses away when the officer shot, a jury could find he was no longer justified in feeling an immediate threat to his or others'

lives or of serious bodily injury.  *Id.*  Additionally, the court noted that "Even were we to agree . . . as to the threat the Taurus posed . . . [i]t is unclear how firing at the back of a fleeing vehicle some distance away was a reasonable method of addressing that threat."  *Id.* at 412.

*Lytle* is instructive here.  Whereas the police officer in *Lytle* was on foot, it is undisputed that Massengill was inside his patrol car.  Although she struck his vehicle, it was at 13.8 miles per hour, and his airbag did not deploy.  Nevertheless, like the driver in *Lytle*, Mrs. McBroom was not shot until she had driven away from Massengill, in this case at least thirty-five feet.  According to one of her experts she was then traveling at 13.1 miles per hour.  The speed limit was 25 miles per hour.  Branning described her as slowly crawling forward.  Massengill stated he "was steady firing as fast as [he] can toward where [he] visualized the driver being."  (Pls.' Resp. Ex. 10 at 6).  Both officers admitted that she was no longer a danger when she drove away, because she was no longer driving towards Massengill.  It cannot be said that this reaction was objectively reasonable as a matter of law.  On these facts a reasonable jury could conclude that she was not a threat of immediate death or serious bodily injury to him.  Even if she was, a jury could also find his response was not objectively reasonable.

Massengill nevertheless speculates that she was an immediate threat to the "residents . . . who may have been present in the roadway."  (Massengill's Mem. Summ. J. at 12).  He offers no evidence to support this contention.  The only evidence is an aerial shot of Saucier Lane, taken four years after the incident.  There are at least two

buildings, which may or may not be residences, may or may not have existed on January 2, 2006, and may or may not have been occupied at the time.  He also offers evidence that Hugh Saucier resided on Beulah Church Road, the street that intersects with Saucier Lane.  He testified that *after* he heard the shots fired, he "could see numerous blue lights of law enforcement vehicles from my home." (Saucier Aff. at 2 (¶5)).  This is not evidence that he was ever outside his home and certainly not outside before she was shot.

Assuming that the buildings are occupied homes that existed on January 2, 2006, a similar argument was examined in *Lytle*.  In that case, the police chase was in a residential neighborhood, and while the driver had just had a head on collision with another vehicle and:

> children were playing somewhere nearby. . . ., there were no children or bystanders in the path of the vehicle, indicating that no one was in immediate danger.  The . . . collision with the oncoming vehicle while making a wide right turn does give us some pause, but we think the jury should assess the depravity that this collision evinced.

*Lytle*, 560 F.3d at 416.  Therefore, there was evidence that the driver in *Lytle* was not an immediate threat of death or serious bodily harm to others.  *Id.*  In the present case, it is undisputed that no one else was outside besides Mrs. McBroom and the police officers.

Therefore, assuming that Massengill was ever under an immediate threat of death or serious bodily harm, there is evidence that neither he nor anyone else remained under this threat at the time he shot Mrs. McBroom.  Furthermore, even if a jury could conclude that she posed some threat of harm after she drove away, a

reasonable jury could conclude that his reaction was not a reasonable response to that threat. He fired at least eleven shots at her in rapid succession while she was fleeing, at possibly thirteen miles per hour.

### D. QUALIFIED IMMUNITY

In the alternative, Massengill pleads qualified immunity. A defendant is entitled to qualified immunity, unless (1) the plaintiff alleges that defendant violated a clearly established constitutional right, and (2) the plaintiff proves that defendant's conduct was objectively unreasonable. *Salas v. Carpenter*, 980 F.2d 299, 305-06 (5th Cir. 1992). "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense." *Id.* at 306.

As for the second prong of the qualified immunity test, a defendant's conduct will be considered objectively unreasonable, if a reasonable official would understand that his conduct violates that constitutional right. *Id.* at 310. If reasonable officers could disagree over the lawfulness of his conduct, then the defendant is entitled to qualified immunity. *Id.* The officer's conduct is viewed in light of the clearly established law at that time. *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

Massengill argues that even if excessive force was used, he is entitled to qualified immunity because she may have reversed back on him a second time and she "would have endangered the lives of residents on both sides of the road." (Massengill's Mem. Summ. J. at 17).

It is speculative that she would have backed up on Massengill a second time and

14

he points to no evidence even suggesting that an objective officer on the scene would have perceived such.  Instead he admitted that after she drove forward she was no longer a threat.  Branning testified that at that point they were going to let her go because there was no where for her to run.  Furthermore, there were only buildings on one side of the road and no people present other than Mrs. McBroom and the officers.

In any event, "[i]t has been long clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Lytle*, 560 F.3d at 417.  "This holds as both a general matter and in the more specific context of shooting a suspect fleeing in a motor vehicle." *Id.* at 417-18.  When the evidence is viewed in the light most favorable to Mrs. McBroom, all reasonable officers would have understood that shooting her was in violation of clearly established law.  Massengill is not entitled to summary judgment on the excessive force claim.

### E.   CONSPIRACY

Mrs. McBroom also brings a claim under Section 1983 against Massengill for a conspiracy to use excessive force and to cover up the excessive force.  He argues that there is no evidence he was a part of any conspiracy.  She responds he was a part of a conspiracy to use excessive force because he failed to report other officers' prior uses of excessive force, and he acted "in furtherance of this custom and conspiracy,"  (Pls.' Resp. Mem. at 19).

Even though there is a jury question on whether Massengill committed excessive force upon Mrs. McBroom and covered it up, there is no evidence he agreed with

anyone else to do so or to use excessive force upon anyone else.  While she presents evidence of prior abuse at the Harrison County jail by other Harrison County officers, there is no evidence that he knew of this prior abuse or that he failed to report it. Therefore, he is entitled to judgment as a matter of law on this claim.

SECTIONS 1985 AND 1986

Mrs. McBroom purports to bring Sections 1985 and 1986 claims against Massengill in both his official and individual capacities.  He argues that the Amended Complaint fails to state such claims  because it does not describe any conspiracy proscribed by those statutes.  The Court has already considered these arguments in its contemporaneous Order Granting Payne's Motion for Summary Judgment.  For the reasons stated therein, these claims are likewise dismissed against Massengill, without prejudice.

STATE LAW CLAIMS

Finally, the McBrooms bring state law claims against Massengill in both his official and individual capacities.  Mrs. McBroom asserts claims for battery, assault, civil conspiracy to use excessive force and to cover it up, and  infliction of emotional distress.  Mr. McBroom brings a loss of consortium claim.  Massengill argues that he cannot be held personally liable because (1) Harrison County is not joined as a party, (2) he is immune under the Mississippi Tort Claims Act, and (3), in the alternative, he did not commit the state law torts.

I.    HARRISON COUNTY

The Court has already considered this argument in its contemporaneous Order

Granting Payne's Motion for Summary Judgment.  For the reasons stated therein, this argument has no merit.  Massengill does not seek dismissal in his official capacity.

## II.    IMMUNITY

Massengill argues he is personally immune under the Mississippi Tort Claims Act because he was acting in the course and scope of employment and she was engaged in criminal activity at the time she was shot.

### A.    COURSE AND SCOPE OF EMPLOYMENT

The MTCA provides:

> no [government] employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment . . . if the employee's conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense.

Miss. Code Ann. § 11-46-7(2).  All but Mrs. McBroom's negligent infliction of emotional distress claims constitutes some form of malice or criminal offense (i.e., battery, assault, civil conspiracy, and intentional infliction of emotional distress).  Therefore, these alleged acts cannot be considered "within the course and scope of employment" under the Mississippi Tort Claims Act.  Massengill is entitled to individual immunity from the negligent infliction of emotional distress claim.

Nevertheless, Massengill argues that the McBrooms are judicially estopped from arguing he did not act outside the course and scope of his employment because they propounded Requests for Admission on this point, which he answered affirmatively. Judicial estoppel "typically applies, when, among other things, a 'party has succeeded

in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1249 (2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).  That the McBrooms issued a Request for Admission on this point is not evidence that they took a position on the answer one way or another.  All they did was ask a discovery question, which Massengill answered.  The McBrooms did not submit his answer to the Court and ask the Court to accept it, nor did the Court accept it.  Therefore, judicial estoppel does not apply.

### B.    POLICE PROTECTION

Massengill alternatively argues that he is personally immune under the police protection exception of the MTCA, because Mrs. McBroom was engaged in criminal conduct.

The act provides in pertinent part:

[G]overnmental . . . employees *acting within the course and scope of their employment or duties* shall not be liable for any claim:
. . .

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police . . . protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]

Miss. Code Ann. § 11-46-9(1)(c) (emphasis added).  The police protection immunity as applied to government employees specifically requires that the employee be acting within the course and scope of his employment.  For the reasons previously discussed,

18

the alleged assault, battery, intentional infliction of emotional distress, and civil conspiracy cannot be considered within the course and scope of Massengill's employment.

Besides the plain language of the statute, the Mississippi Supreme Court likewise holds that the immunity provisions of § 11-46-9 do not apply to an employee engaged in intentional, criminal conduct. *City of Jackson v. Powell*, 917 So. 2d 59, 70 (¶42) (Miss. 2005) (police protection exception); *Lee v. Thompson*, 859 So. 2d 981, 987 (¶16) (Miss. 2003) (inmate exception); *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (¶13) (Miss. 2001) ("absent malice, the officer is also immune" under the police protection exception); *Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991) (police protection does not apply to assault or battery). These cases all involved alleged excessive force. The court held, "The statute granting conditional immunity to police officers is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties. Physically abusing a person in custody is not one of the duties of law enforcement personnel." *City of Jackson*, 917 So. 2d at 70 (¶42) (officers beat and kicked a handcuffed, subdued arrestee). Notably, *Bridges* held that where an arrestee was actively resisting arrest, the police protection immunity applied to the officer "absent malice." *Bridges*, 793 So. 2d at 588 (¶13).

Whether or not Mrs. McBroom was engaged in criminal activity at the time she was shot, the police protection exception does not afford Massengill personal immunity from the battery, assault, civil conspiracy, and intentional infliction of emotional

distress claims.

III.   BATTERY

Massengill argues that the battery claim should be dismissed because he is entitled to the affirmative defense of self-defense. Mrs. McBroom responds she was not a threat to his safety.

Because self-defense is an affirmative defense, Massengill "must establish 'beyond all peradventure all of the essential elements of the . . . defense'" in order to obtain summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). For the reasons previously discussed, there is evidence from which a reasonable jury could conclude that he was not acting in self-defense at the time he shot her.

IV.   ASSAULT

Massengill argues that the assault claim should be dismissed because it merges into the battery claim. He offers no authority for this proposition. Indeed, assault is a separate tort from battery under Mississippi law. *Webb*, 583 So. 2d at 951. "Assault occurs where a person '(a) . . . acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'" *Id.* (quoting Restatement (Second) of Torts §21 (1965)). Battery, on the other hand, is intentionally causing such a contact with another. *Webb*, 583 So. 2d at 951.

V.   CIVIL CONSPIRACY

As stated previously, there is no evidence that Massengill agreed with another to use excessive force or to conceal it. Therefore, he is entitled to judgment as a matter of law on this claim.

## VI.    Intentional Infliction of Emotional Distress

Massengill argues that the "emotional distress suffered by Zeta McBroom as a result of her permanent paralysis arising from this incident was due to her own series of bad decisions o[n] January 2, 2006." (Massengill's Mem. Summ. J. at 27).  For the reasons previously stated, there is evidence from which a reasonable jury could conclude that shooting her was not justified.   Therefore there is evidence that he caused her emotional distress.

## VII.    Loss of Consortium

Massengill argues there is no evidence of Mr. McBroom's loss of consortium.  Mr. McBroom responds that his wife's injury affected their relationship.

"A cause of action accruing to a party for loss of consortium is separate and distinct from that party's spouse suffering personal injury." *Coho Res., Inc. v. McCarthy*, 829 So. 2d 1, 22 (¶66) (Miss. 2002).  Consortium includes society, companionship, love, affection, aid, services, support, sexual relations and comfort. *Id.* at 20 (¶59).  Mr. McBroom "must show that he . . . suffered damages arising out of [Mrs. McBroom]'s injuries." *Id.* at 22 (¶66).  Thus, where there was evidence on how the injury produced a decline in a marital relationship, a jury verdict was affirmed. *Id.* at 22-23 (¶67).  Where "there is no testimony . . . as to how [a spouse's] injury has adversely affected" the martial relationship, there was insufficient evidence of loss of consortium. *Id.* at 23 (¶67).

Mrs. McBroom testified that she cannot work because of her paralysis.  She also

testified:

A.   It has definitely put a strain on the relationship.

Q.   Okay.  In what way?

A.   Having–I believe having to care for your wife medically would definitely put a lot–put–I have no idea how to answer this.  I really just don't.

Q.   Okay.  Before this incident, you and Mr. McBroom got along pretty good, though?

A.   Very well, yes.

(Mrs. McBroom Dep. at 61).  Viewing the evidence in the light most favorable to Mr. McBroom, the evidence indicates that the injury has prevented him receiving financial support, and the stress of having to take care of Mrs. McBroom's medical needs has deteriorated the relationship between them.  Therefore Massengill is not entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above Defendant John Massengill's Motion for Qualified Immunity and Summary Judgment [176] should be and is hereby **GRANTED** on the individual capacity claims of Section 1983 conspiracy, negligent infliction of emotional distress, and civil conspiracy.  The Section 1983 official capacity claims and the 1985 and 1986 claims are dismissed without prejudice.  The remainder is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 6th day of October, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE